JUDGE NATHAN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Tara J. De Long a/k/a T. De Long | § | |
|     Plaintiff | § | |
| v. | § | Case No.: |
| LR Credit 20, LLC | § | |
| Mel S. Harris and Associates, LLC | § | |
| David Waldman | § | |
| John Does # 1 – 10 | | |
|     Defendants | | |

**ORIGINAL COMPLAINT AND JURY DEMAND**

Plaintiff TARA J. DE LONG a/k/a T. DE LONG brings suit for the violations of the Fair

Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, N.Y. Gen. Bus. Law § 349 *et seq.*, and

N.Y. Judiciary Law § 487 *et seq.*, of Defendant debt collectors for systematically filing and

litigating of time-barred lawsuits against Plaintiff and hundreds of others in New York, and in

support alleges as follows.

### A.   JURISDICTION AND VENUE

1.      The Court has federal question jurisdiction over the lawsuit because the action arises

under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, (FDCPA).  Jurisdiction

of the Court arises under 28 U.S.C. § 1331 in that this dispute involves predominant issues of

federal law, the FDCPA. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims

because said claims are so related to the claims within the Court's original jurisdiction that they

form part of the same case or controversy under Article III of the United States Constitution.

2.      Venue in this District is proper because all or a substantial part of the events or omissions

giving rise to their claims occurred in New York County, New York.

3.      Plaintiff Tara J. De Long a/k/a T. De Long is an individual who resides in New York

County, New York.

4.      Defendant LR CREDIT 20, LLC is a corporation organized under the laws of the State of New York, with its principal place of business at 315 Park Ave. South, 20th Floor, New York, NY 10010. It may be served by and through the New York Secretary of State, One Commerce Plaza, 99 Washington Avenue, Albany, NY 12231.

5.      Defendant MEL S. HARRIS AND ASSOCIATES, LLC is a limited liability corporation organized under the laws of the State of New York, with its principal place of business at 5 Hanover Square, 8th Floor, New York, NY 10004. It may be served by and through the New York Secretary of State, One Commerce Plaza, 99 Washington Avenue, Albany, NY 12231.

6.      Defendant David Waldman is an individual who, on information and belief, resides in the State of New York. He may be served at his place of employment, MEL S. HARRIS AND ASSOCIATES, LLC, 5 Hanover Square, 8th Floor, New York, NY 10004, or wherever he may be found.

### B.      STATEMENT OF FACTS

7.      Defendant LR Credit 20, LLC ("LRC") is a debt collector that purchases charged off consumer debts for pennies on the dollar and files lawsuits to collect those alleged debts.

8.      There are currently twenty three LRC entities, numbered LR Credit # 1 - 23 operating in NY State, according to the NY Secretary of State ("LRC Entities").

9.      The LRC Entities are wholly-owned subsidiaries of the same publically traded corporation, Leucadia National Corporation.

10.     Each of the LRC Entities purchases for pennies on the dollars putative consumer debts

2

after they are charged off with the alleged original creditor.

11.     On information and belief, the reason the LRC Entities create separate corporate debt collection vehicles is to create thinly capitalized corporations to protect their assets when they are sued for violating the FDCPA, and to minimize their exposure for the same.[1]

12.     The LRC Entities exclusively use MSH to collect the putative debts.

13.     MSH collects these putative debts by filing tens of thousands collection suits in the name of the LRC entities, sending out hundreds of thousands of collection letters, and by making hundreds of thousands of collection telephone calls.

14.     A large number of the collection lawsuits go out under the (putative) personal signature of attorney David Waldman ("Waldman").

15.     On January 5, 2012, LRC, by and through its agent MSH, filed a collections lawsuit against now-Plainitff De Long in Index Number CV-000289-11/NY, LR Credit 20, LLC v. Tara J. De Long, New York Civil Court.

16.     Waldman personally signed the collections lawsuit on December 20, 2011, or at least that representation was made as his signature was affixed to the complaint.

17.     The complaint was served on DeLong on or about January 12, 2012, according to the affidavit of service,[2] and mailed to DeLong shortly thereafter.

---

1 For example, statutory damages for FDCPA class actions are limited to the lesser of $500,000 or one percent of the debt collector's net worth. 15 USC § 1692k(a)(2)(B).

2 Incidentally, the affidavit of service states that service was made by serving a "John Doe" "cotenant" who allegedly told the process server to slide the complaint under the door. This is false. This is part of the pattern and practice of MSH, LRC, and the LRC Entities to file false affidavits of service. In his order granting class certification in an FDCPA class action lawsuit against MSH and the LRC Entities, Judge Denny Chin found that the very records of MSH, the LRC Entities demonstrated their widespread use of false affidavits of service. Sykes v.

3

18.     On January 20, 2012 DeLong filed a *pro se* answer to the collections lawsuit.

19.     DeLong used the *pro se* answer form provided by the NY Civil Court Clerk.

20.     The *pro se* answer form had a number of boxes for consumers to check for affirmative defenses including the following: "11. ____ Statute of Limitations (the time has passed to sue on this debt: more than *six years*.)" (emphasis added).

21.     DeLong did not check the box for the affirmative defense of statute of limitations in his original *pro se* answer.

22.     The complaint sought to collect an alleged credit card debt where Chase Bank USA, NA ("Chase") was the original creditor.

23.     The complaint sought interest from June 16, 2008.

24.     On information and belief, June 16, 2008 is thirty days after the date of last payment on the putative account.[3]

25.     The debt collection lawsuit is time barred because it was filed more than three years after the accrual of the cause of action.

26.     Under New York's "borrowing statute," CPLR 202, when a nonresident sues in New York on a cause of action accruing outside New York, the action "cannot be commenced" unless

---

Mel Harris & Associates, LLC, 2012 WL 3834802 at * 2, 3. (S.D.N.Y. Sept. 4, 2012) ("Between January 2007 and January 2011, Samserv defendants performed service of process in 94,123 cases filed by Mel Harris in New York City Civil Court, 59,959 of which were filed on behalf of Leucadia defendants. Records maintained by defendants *reveal hundreds of instances of the same process server executing service at two or more locations at the same time*...These facts, together with the high number of default judgments obtained by defendants, provide substantial support for plaintiffs' assertion that defendants regularly engaged in sewer service.") (emphasis added).

3  In the collection action, LRC and MSH contended that the "charge-off date" with Chase was January 31, 2007. A charge-off occurs when a creditor moves a debt from profit to loss on its balance sheet, typically 180 days after the account becomes delinquent. See, e.g., Fed. Fin. Institutions Examination Council, Uniform Retail Credit Classification and Account Management Policy, 64 Fed. Reg. 6,655 at 6,656 (noting that commentators representing the credit card industry stated they charged off open-ended credit accounts 180 days after delinquency).

the action is within the statute of limitations of both New York and the jurisdiction where the cause of action accrued. Portfolio Recovery Assoc., LLC v. King, 927 N.E.2d 1059, 1061-62 (N.Y. 2010), citing to Global Fin. Corp. v. Triarc Corp., 93 N.Y.2d 525, 528 (N.Y. 1999).

27.     As a purported creditor contends it suffered an economic harm for a breach of an alleged credit card agreement, the creditor's cause of action "accrues where the plaintiff resides and sustains the economic impact of the loss." Id. (internal quotes omitted).

28.     Chase has main office, as set forth in its articles of association,[4] in Delaware, and has its principal place of business in Delaware. This has been true from the date of the alleged default of the account to present. Indeed this has been true since at least February 2001.

29.     Therefore, Chase's cause of action for breach of a credit contract accrued in Delaware.

30.     Further, the statute of limitations for breach of a credit contract is three years under Delaware state law, Del Code Ann, tit 10, § 8106; King at 1060.

31.     Now-Defendants were required to file and serve the collection suit within the same time period as the putative original creditor because LRC, as the putative assignee, cannot stand in better shoes than the putative assignor. King at 1016.

32.     By filing and serving the collection lawsuit, Defendants represented to DeLong and the Court that the debt they were collecting upon was not time barred when in fact it was. Defendants misrepresented that the debts they seek to collect are not time barred for the purpose of deceiving DeLong and other consumers (least sophisticated or otherwise) into believing they had no basis on limitations grounds to challenge the collection lawsuits; that any attempt to challenge the collection

---

4 Corporations have articles of incorporation and a state of incorporation. National banks do not. Instead, national banks designate a state for its "main office" in its "articles of association."

5

lawsuits on limitations grounds would be futile; and therefore that the consumers should not challenge these suits in court but instead had no choice to pay what was demanded under the (illegal) threat of judgment and court costs on time barred debts. Likewise, the purpose of these misrepresentations was to deceive the civil court that now-Defendants were entitled to judgment and costs of court when they were not.

33.     On February 21, 2012, few weeks after filing an initial *pro se* answer, DeLong went to a free Legal Services clinic and learned for the first time that he may have a statute of limitations defense given that Chase was the original putative creditor. De Long was not able to obtain a Legal Services attorney at that time, however.

34.     On February 23, 2012 DeLong filed a *pro se* Order to Show Cause to Amend the Answer to assert the statute of limitations defense.

35.     MSH filed opposition to the motion to amend on March 19, 2012.[5]

36.     DeLong was ultimately fortunate enough to obtain counsel through the Urban Justice Center, who filed a notice of appearance on March 20, 2012.

37.     The motion to amend complaint was granted.

38.     The vast majority of consumers are not as fortunate of DeLong. "There were 241,195 debt collection lawsuits filed in New York in 2009, where 99% of the debtors were not represented by counsel, and where 66% of these cases resulted in defaults." Diaz v. Portfolio Recovery Associates, LLC, 2012 WL 661456 at * 8 (E.D.N.Y. Feb. 28, 2012) report and recommendation adopted, 2012 WL 1882976 (E.D.N.Y. May 24, 2012).

---

5 The certificate of service states the opposition was served by mail on DeLong on March 19, 2012. The court file shows the transmittal letter for the Opposition file-stamped March 20, 2012.

Last saved 12/19/2012 2 25 PM

39.     While the FDCPA is a strict liability statute, Defendants actually knew that Chase has main office, as set forth in its articles of association, in Delaware, and has its principal place of business in Delaware.

40.     It is the pattern and practice of MSH, Waldman, LCR, and the other LCR Entities have filed hundreds of time barred collection lawsuits, that, where the putative original creditor is Chase and cause of action accrued more than three years from the date they filed and served the collection lawsuit.[6]

41.     DeLong is precisely the type of vulnerable consumer the FDCPA was designed to protect. In the time leading up to filing and serving of the time-barred lawsuit, DeLong's life had been turned upside down, leaving DeLong particularly vulnerable to the harm inflicted by now-Defendants. DeLong's partner recently died. DeLong suffered serious injury by an electrocution accident at work. DeLong underwent major surgery, and suffered serious, long term nerve and muscular injury. As a result of the electrocution DeLong became unemployed, living on food stamps, and at risk for homelessness. It was during this fragile time in his life that now-Defendants began to collect the time barred debt. This inflicted damages on a vulnerable DeLong. DeLong was in physical pain and discomfort from the electrocution and subsequent surgery, which was exasperated by the stress, fear, anger, and inability to sleep wrought by Defendants' actions, and constant feelings of dread. DeLong had difficulty sleeping for months,

---

6 While it did not happen in the case at bar, the majority of these time-barred Chase account lawsuits result in a default judgment against the consumer. In their application for default, it is the pattern and practice of MSH, Waldman, LCR, and the other LCR Entities to file a false affidavit of facts affirmatively misstating a key fact to the civil court clerk and the civil court judge: that Chase has its principal place of business in NY, when in fact it is in Delaware. Based on this false representation of fact, MSH, Waldman, LCR, and the other LCR Entities further represent to the civil court clerk and to the civil court judge that the cause of action accrued in the State of New York, that the cause of action was governed by New York's 6 year statute of limitations, and thus that the debt was not time barred. Based on these false representations to the civil court clerk and civil court judge, MSH, Waldman, LCR, and the other LCR Entities obtain hundreds of default judgments on Chase accounts that are in fact time-barred, i.e. where the cause of action accrued more than 3 years from the filing of the collection lawsuit.

constantly fixated on the debt collection lawsuit. DeLong had headaches and difficulty breathing. To even have to physically go to court and have to fight the time barred debt caused pain and physical discomfort given DeLong's weakened and injured physical state.

42.     DeLong also suffered damages in the form of the time lost and the expenses incurred in having to defend against a lawsuit that Defendants had no legal right to file or serve in the first place.

### C.     COUNT # 1: Violations of the Fair Debt Collection Practices Act.

43.     Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

44.     The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). See also Hamilton v. United Healthcare of La., Inc., 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

45.     Congress designed the FDCPA to be enforced primarily through private parties – such as plaintiff – acting as "private attorneys general." See S. Rep. No. 382, 95th Con., 1st Sess. 5, ("[t]he committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance"); and Jacobson v. Healthcare Fin. Servs., 516 F.3d 85, 91 (2d Cir. 2008) ("[i]n this way, the FDCPA enlists the efforts of

8

sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

46.     The obligation LRC and MSH allege to be owed by plaintiff is a "debt" as defined by 15 U.S.C. § 1692a(5) because the putative credit card debt was incurred primarily for family, personal or household purposes.

47.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because Plaintiff was alleged to owe a "debt."

48.     Defendants are each a "debt collector" as defined in 15 U.S.C. § 1692a(6) because their principal purpose is the collection of debts and/or they regularly attempt to collect debts, directly or indirectly.

49.     MSH is debt collector because it files tens of thousands of collection lawsuits, sends tens of thousands of collection lawsuits, and makes tens of thousands of calls seeking to collect debts.

50.     Waldman is a debt collector because he (purportedly) signs thousands of collection lawsuit pleadings, and (purportedly) litigates thousands of collection lawsuits. Waldman is also a debt collector because, on information and belief, he supervises, directs, and manages the debt collection litigation apparatus for MSH.

51.     LRC is a "debt collector" because it purchases thousands of alleged consumer debts after they are in default with the putative original creditor. LRC regularly attempts to collect these debts, directly or indirectly, through (and exclusively through) MSH,, and it is LRC's principle purpose to do so. MSH collects these debt for LRC by filing thousands of collection lawsuits,

9

sending thousands of collection letters, and making thousands of collection phone calls.

52.     John Does # 1 - 10 are persons, currently unknown to Plaintiff, who made the decisions to take the actions that form the basis of this complaint, who made the decision to file and to continue collection lawsuits for time barred debts, who developed the debt collection operations and policies of MSH, LRC or the servicers of LRC, and who exercised control over the operation and management of the collection activities of the same.

53.     The actions of Defendants enumerated in the above statement of facts constitute an attempt to collect a debt, or were taken in connection with an attempt to collect a debt, within the meaning of the FDCPA.

54.     Defendants violated the following sections of the FDCPA: 15 USC §§ 1692d, 1692e, and 1692f. By way of example and not limitation Defendants violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: engaging in conduct the natural consequence of which is to harass, oppress or abuse any person; using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; misrepresenting the services rendered or compensation which may be lawfully received; the false representation or implication that any individual is an attorney or that any communication is from an attorney; threatening to take and actually taking an action prohibited by law; communicating or threatening to communicate to any person credit information which is known or which should be known to be false; using any false, deceptive or misleading representations or means; using unfair or unconscionable means; and collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the

agreement creating the debt or permitted by law.

**D.** **Count # 2: New York General Business Law Section 349 *et seq.***

55.     Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

56.     New York General Business Law Section 349(a) prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in this state…"

57.     An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such action." N.Y. Gen. Bus. Law § 349(h).

58.     As enumerated above, Defendants violated N.Y. Gen. Bus. Law § 349 *et seq.* by using deceptive acts and practices in the conduct of their businesses. This includes threatening, filing, prosecuting, maintaining, and seeking judgment in hundreds of lawsuits seeking to collect time barred debts; and seeking post-judgment collections on the same.

59.     Defendants made implied and express misrepresentations that the debts they seek to collect are not time-barred for the purpose of deceiving DeLong and other consumers (least sophisticated or otherwise) into believing they had no basis on limitations grounds to challenge the collection lawsuits; that any attempt to challenge the collection lawsuits on limitations grounds would be futile; and therefore that the consumers should not challenge these suits in court but instead had no choice to pay what was demanded under the (illegal) threat of judgment and court costs on time barred debts. Likewise, the purpose of these misrepresentations was to

Last saved 12/19/2012 2 25 PM

deceive the court that now-Defendants were entitled to judgment and costs of court, when they were not.

60.     Defendants' conduct has a broad impact on consumers at large. Defendants' conduct impacts the thousands of consumers in the state of New York who have had time barred collection lawsuits threatened, filed, maintained, or prosecuted against them.

61.     Defendants committed the above described acts willfully and/or knowingly.

62.     Defendants' wrongful and deceptive acts have caused injury and damages to Plaintiff and unless enjoined will cause further irreparable injury.

63.     As a direct and proximate result of those violations of N.Y. Gen. Bus. Law § 349 *et seq*, Plaintiff has suffered compensable harm and is entitled to preliminary and permanent injunctive relief, as to recover actual and treble damages, costs and attorney's fees.

E.     **COUNT # 3, New York Judiciary Law § 487 (as to MSH and Waldman only)**

64.     N.Y. Judiciary Law § 487 creates a private right of action against an attorney or counselor who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party;" or "wilfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for."

65.     MSH and Waldman violated § 487 in their systematic misrepresentations to the courts and to consumers. MSH and Waldman represented that the debts they were collecting upon were not time barred when in fact they were time barred.

66.     MSH and Waldman made these misrepresentations that the debts they seek to collect are not time-barred for the purposed of deceiving DeLong and other consumers (least sophisticated or

otherwise) into believing they had no basis on limitations grounds to challenge the collection lawsuits; that any attempt to challenge the collection lawsuits on limitations grounds would be futile; and therefore that the consumers should not challenge these suits in court but instead had no choice to pay what was demanded under the (illegal) threat of judgment and court costs on time barred debts. Likewise, the purpose of these misrepresentations was to deceive the court that now-Defendants were entitled to judgment and costs of court, when they were not.

67.      MSH and Waldman violations of § 487 inflicted damages, for the reasons and in the manner previously indicated.

68.      Plaintiff is entitled to actual damages, treble damages, and attorneys' fees and costs for the violations of N.Y. Judiciary Law § 487 by MSH and Waldman, and Plaintiff so seeks.

### F.      JURY DEMAND.

69.      Plaintiff demands a trial by jury.

### G.      PRAYER

70.      WHEREFORE, Plaintiff requests the following relief:

    **a.**   A declaration that all Defendants have committed the violations of law alleged in this action;

    **b.**   An order enjoining and directing all Defendants to cease violating GBL § 349 *et seq.*;

    **c.**   Statutory damages under 15 U.S.C. § 1692k and GBL § 349(h);

    **d.**   Civil penalties under GBL § 349 against all Defendants

    **e.**   Civil penalties under Judiciary Law § 487 against Defendant MSH and Waldman.

    **f.**   Treble damages under GBL § 349 against all Defendants;

g.   Treble damages under Judiciary Law § 487 Defendant MSH and Waldman;

h.   An order awarding disbursements, costs, and attorneys' fees under 15 U.S.C. § 1692k, and GBL § 349 against all Defendants;

i.   An order awarding disbursements, costs, and attorneys' fees under Judiciary Law § 487 against all Defendants;

j.   A judgment for actual, statutory, and treble damages;

k.   Prejudgment and post judgment interest as allowed by law;

l.   All other relief, in law and in equity, both special and general, to which Plaintiff may be justly entitled.

Dated:  Brooklyn, New York
        December 19, 2012

Respectfully submitted,

Ahmad Keshavarz
One of Plaintiff's Attorneys
The Law Office of Ahmad Keshavarz
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax:    (877) 496-7809
Email: ahmad@NewYorkConsumerAttorney.com

Harvey Epstein, Esq.
URBAN JUSTICE CENTER

BY: Nasoan Sheftel-Gomes
Nasoan Sheftel-Gomes, of counsel
123 William Street, 16th Floor
New York, NY 10038
Phone: (646) 459-3013 Fax: (212) 533-4598
E-mail: nsheftel-gomes@urbanjustice.org

14